UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CARMEN RUFFIN | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 1:17-cv-08849 |
| | ) | |
| v. | ) | Hon. Sharon Johnson Coleman |
| | ) | |
| SETERUS, INC., MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; JP MORGAN CHASE BANK; BRYAN BLY, VICE PRESIDENT, and FEDERAL NATIONAL MORTGAGE ASSOCIATION, | ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Carmen Ruffin filed a nine-count Complaint alleging various claims related to her mortgage. Seterus, Inc. ("Seterus"), Mortgagee Electronic Registration Systems, Inc. ("MERS"), and Federal National Mortgage Association ("Fannie Mae") (collectively, "Defendants") move for judgement on the pleadings as to all counts. Defendants' Motion for Judgment on the Pleadings [38] is granted.

**Background**

In November 2006, plaintiff Carmen Ruffin entered into a mortgage loan agreement with J.P. Morgan Chase Bank ("Chase") for the property commonly known as 6512 South Kenwood Avenue in Chicago, Illinois. This transaction was evidenced by a note and secured by a mortgage. In September 2010, Chase transferred ownership of the note and mortgage to Fannie Mae. Thereafter, Ruffin received a letter indicating that Chase intended to transfer servicing of the loan to IBM Lender Process Services, Inc. (now known as "Seterus, Inc."), effective October 1, 2010. Ruffin asserts that the assignment of her mortgage was improperly executed and notarized due to two alleged discrepancies: the executor, Bryan Bly, was a "robo-signer" who was not authorized to

1

sign documents on behalf of the principal, and the promissory note lacked an endorsement. She asserts that as a result the assignment was invalid and that Defendants falsely claim an adverse interest in the subject property. Ruffin does not allege that the loan was in default at this time.

Ruffin brought this nine-count action against Defendants, alleging violations of the Real Estate Settlement Procedures Act ("RESPA") (Counts I and IV), the Truth-in-Lending Act ("TILA") (Counts II and V), the Fair Debt Collection Practices Act ("FDCPA") (Counts III and VI), as well as slander of title (Count VII), quiet title (Count VIII), and declaratory relief (Count IX). Ruffin seeks damages, declaratory and injunctive relief, and attorney's fees. Defendants assert that all claims fail as a matter of law and ask this Court to enter judgement in Defendants' favor under Federal Rule of Civil Procedure 12(c).

**Legal Standard**

A Rule 12(c) motion for judgment on the pleadings is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Adams v. City of Indianapolis*, 742 F.3d 720, 727–728 (7th Cir. 2014). This Court considers whether the pleadings contain sufficient factual material that allow the reasonable inference that the non-moving party could prevail in the action. *Id.* at 728; *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Pro se motions, particularly, should be construed liberally. *Otis v. Demarasse*, 886 F.3d 639, 644 (7th Cir. 2018). However, "even pro se litigants must follow rules of civil procedure." *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006).

Pleadings consist of the complaint, the answer, and any written instruments attached as exhibits. *See* Fed. R. Civ. P. 10(c); *see also Hous. Auth. Risk Retention Grp., Inc. v. Chicago Hous. Auth.*, 378 F.3d 596, 600 (7th Cir. 2004). The Seventh Circuit interprets "written instrument" to include

loan documentation and correspondence between parties. *N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 453 (7th Cir. 1998). Thus, the Court may consider the letters between Ruffin and Seterus and loan documentation, attached to Ruffin's Complaint as Exhibits A–H.

**Discussion**

*RESPA Claims (Counts I and IV)*

Ruffin contends that the Defendants violated RESPA by failing to adequately respond to her Qualified Written Requests. A Qualified Written Request is a written correspondence through which the borrower requests information regarding her mortgage or reports that her account is in error. *See* 12 U.S.C. § 2605(e)(1)(B). RESPA requires that any servicer of a federally-related mortgage loan respond to the borrower acknowledging receipt within five days and remedy the account or provide a written response within 30 days. *See* 12 U.S.C. §§ 2605(e)(1)(A), (e)(2)(A)–(C).

Ruffin sent two Qualified Written Requests to Seterus wherein she requested information about her loan and asserted her claim that Bly's signature rendered the assignment invalid. She claims that Seterus responded to these requests late and that the content of their responses did not address her concerns. In contrast, Seterus asserts both responses were timely and adequately detailed.

This Court finds that Seterus complied with the RESPA requirements for Qualified Written Requests. Seterus provided timely responses to Ruffin, acknowledging her letters and responding to the requests five days and 27 days later, respectively. (Dkt. 1, Ex. B-1; *see also* Dkt. 24, Ex. H.) Further, Ruffin's assertion that Seterus's response was inadequate does not support any legal theory that entitles her to relief under RESPA. A servicer's duty to respond "does not arise with respect to all inquiries or complaints from borrowers to servicers." *Perron on behalf of Jackson v. J.P. Morgan Chase Bank, N.A.*, 845 F.3d 852, 857 (7th Cir. 2017) (internal citations and quotations omitted). Ruffin's letter requested information about the fees, costs, and escrow associated with her account and

information regarding the allegedly defective assignment and the validity of ownership.  Under RESPA, Ruffin is not entitled to a response for the latter requests for information.  *See id.*; *see also MorEquity Inc. v. Naeem*, 118 F. Supp. 2d 885, 901 (N.D. Ill. 2000) (Gettleman, J.) (dismissing RESPA counterclaim because borrower's request did not relate to "servicing" the loan).

Moreover, Subsection 2 of RESPA provides servicers with three options that fulfill their obligation to adequately reply to Qualified Written Requests.  *See* 12 U.S.C. § 2605(e)(2)(A)–(C).  In this case, Seterus chose to investigate the issues and provide Ruffin with various documents, including a payoff letter, escrow analyses, reinstatement quotes, and contractual payment history to address her request for a "complete audit of the account."  Even if the fees attributed to Ruffin's account were inappropriate, Seterus fulfilled their duty under RESPA by explaining why they believed her account was correct.  Ruffin's failure to reconcile that information with Seterus's conclusion does not make Seterus liable under the statute.  *See Bauer v. Roungpoint Mortgage, Corp.*, No. 18 C 3634, 2018 WL 5388206, at *6 (N.D. Ill. Oct. 29, 2018) (Kendall, J.) (citing *Bates v. JPMorgan Chase Bank, NA*, 768 F.3d 1126, 1134–35 (11th Cir. 2014) (no RESPA violation where borrower was merely "confused and/or unsatisfied" with the answer from the servicer where servicer provided written explanation for its belief that borrower's account was correct)).  As a result, the Court dismisses Ruffin's Counts I and IV.

*TILA Claims (Counts II and V)*

In Count II, Ruffin asserts that Seterus violated §1641(g) of TILA by failing to provide her with written notice when her loan transferred ownership.  Although unclear, in Count V Ruffin appears to assert a duplicative claim against Seterus and Fannie Mae.  TILA provides that the new creditor or assignee of the debt shall notify the borrower in writing of such transfer within 30 days of a mortgage loan sale.  *See* 15 U.S.C. § 1641(g).  If a creditor fails to provide notice, the statute authorizes the borrower to bring a claim for monetary damages.  *See* 15 U.S.C. § 1640(a).  However,

4

TILA also provides that any action under this section must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *see also Fendon v. Bank of Am., N.A.*, 877 F.3d 714, 716 (7th Cir. 2017), reh'g denied (Jan. 11, 2018). In this case, Ruffin brings her Complaint seven years after the alleged transfer took place and objects to the notion of a statute of limitations running against her during a period in which she had no knowledge of the violation.

Ruffin contends that she would not have known that the mortgage was transferred by a title search. Defendants respond that a discovery rule cannot revive stale TILA claims. Equitable tolling is reserved for cases where the plaintiff "could not have obtained the information necessary to file a claim before the end of the limitations period." *Asher v. Chase Bank USA, N.A.*, 310 F. App'x 912, 917 (7th Cir. 2009). Ruffin's Complaint states that she received a notice of transfer of servicing from Seterus shortly after she received a notice of assignment of sale from Chase. In fact, Ruffin admits that these notices prompted her to carefully research the loan and its documents. Therefore, Ruffin was aware within the limitations period "of the possibility that [her] rights [had been] violated" and the doctrine of equitable tolling is not applicable in this case. *Chapple v. National Starch & Chem. Co.*, 178 F.3d 501, 506 (7th Cir. 1999). Thus, this Court enters judgment in favor of Defendants as to Counts II and V.

*FDCPA Claims (Counts III and VI)*

Ruffin alleges that Seterus violated several provisions of the FDCPA. Seterus challenges the FDCPA's applicability based on the Act's definition of "debt collector." Under the FDCPA, "debt collector" is defined as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692(a)(6). This definition does not include any "debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692(a)(6)(F). Seterus contends that judgment in

5

their favor is appropriate because Ruffin did not allege in her Complaint that her loan was in default when Seterus began servicing it. In an attempt to remedy this deficiency, Ruffin's response hints at the status of the loan by arguing that Seterus engaged in oppressive, deceptive, or unfair debt collection practices by failing to "properly validate the alleged debt as demanded by Plaintiff" and refusing to "provide a complete escrow analysis." (Dkt. 43 at 7.) This Court notes that even these additional suggestions are likely insufficient to allege that her loan was in default at the time Seterus began servicing it.

However, a plaintiff cannot amend her complaint in her response brief to a motion to dismiss. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). The additional facts Ruffin provides regarding improperly validated debt and failure to provide a complete escrow analysis are not properly before this Court. In fact, Ruffin's Complaint does not provide any facts explaining why Seterus is liable under the FDCPA or how they engaged in abusive debt collection practices. Given that Ruffin merely presents conclusions, this Court does not find that Ruffin has adequately pled any FDCPA violation. The Court grants Defendants' motion for judgement on the pleadings as to Counts III and VI.

*Slander of Title and Quiet Title (Count VII and VIII)*

Next, Ruffin asserts slander of title and quiet title claims in Counts VII and VIII, respectively. Ruffin contends that Defendants have disparaged her title by "claim[ing] an interest in the Subject Property adverse to the Plaintiff," which "constitute[s] a cloud on plaintiff's title to the property." (Dkt. 1, Count VIII ¶¶ 3, 5; *see also id.*, Count VII ¶ 3). Defendants argue that both claims should be dismissed because Ruffin lacks standing, and further, because she fails to allege the essential elements of her claims. Ruffin responds only to the issue of standing in her opposition, and in turn, forfeits the other claims. *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011).

6

To have standing, a party much have suffered an injury to a concrete and particularized injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see also Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 771 (7th Cir. 2013). A litigant must assert his or her own legal rights, rather than the rights of a third party. *Rawoof v. Texor Petroleum Co.*, 521 F.3d 750, 757 (7th Cir. 2008). Under Illinois law, a third party generally lacks standing to challenge the validity of an assignment. *Bank of America Nat'l Ass'n v. Bassman FBT, L.L.C.*, 2012 IL App (2d) 110729, ¶ 16, 981 N.E.2d 1 (2nd Dist. 2012) (citing *Schieroni v. Deutsche Bank National Trust Co.*, No. H-10-663, 2011 WL 3652194, *6 (S.D. Tex. Aug.18, 2011) ("Courts considering similar allegations have concluded that mortgage debtors lacked standing to challenge the chain of title under the contracts by which the assignments were allegedly made. When, as here, the borrowers are not parties to the assignment contracts, courts decline to find that an attempted foreclosure is invalid or otherwise grant relief.")). *Bassman* outlines general exceptions to this rule, including that a third party can challenge the validity of a contract only where she establishes a significant and direct interest in its validity. 2012 IL App (2d) 110729 at ¶ 16.

Here, Ruffin's direct interest in the assignment is questionable, at best. First, the validity of the assignment of the mortgage pertains only to whom Ruffin owes a debt, rather than whether the debt is owed. Ruffin's Complaint makes it clear that she was informed of who owns her debt, and to whom to make mortgage payments. (Dkt 1, ¶¶ 15–16). Second, this case is unlike *Elesh v. Mortgage Electronic Registration Systems, Inc.*, No. 12 C 10355, 2013 WL 4476547 (N.D. Ill. Aug. 16, 2013) (Kennelly, J.), which Ruffin suggests dictates the outcome of this case. In *Elesh*, the plaintiff had standing only because the court concluded that a cloud on his title existed. *Id.* at *3. Specifically, the defendants' foreclosure suit was previously dismissed for their failure to establish that they possessed of an authentic promissory note. *Id.* at *2. The note that the defendants attached in that related prior suit, endorsed in blank, was not signed by the original owner or anyone

7

else.  *Deutsche Bank Nat'l Trust Co. v. Elesh*, No. 12 C 3644, 2013 WL 2242452, at *1 (N.D. Ill. May 21, 2013) (Guzman, J.).  Because the note was not signed by anyone, the court concluded that the assignment constituted a cloud on the title.  *Id.*  In comparison, Defendants in this case have produced a properly indorsed note, signed by Ruffin, that establishes their ownership of the assignment.  (Dkt. 23, Ex. A.)  The fact that the note contains a "blank indorsement" does not invalidate the document under Illinois law.  *See* 810 ILCS 5/3-205(b); *see also Deutsche Bank National Trust Company for Long Beach Mortgage Loan Trust 2006–9 v. Schoenberg*, 2018 IL App (1st) 160871, ¶ 27, 105 N.E.3d 80 (1st Dist. 2018).  Similarly, the suggestion that the assignment was executed by a "robo-signer" is speculative.  While Ruffin suggests that there is overwhelming proof that Bly is a robo-signor, she does not explain or even hint at a basis for that allegation.  Her contention that the signatures on the different assignments are not completely identical does not raise a sufficient question as to the validity of the signature.  *Citibank, N.A. v. Wilbern*, No. 12 C 755, 2013 WL 1283803, at *4 (N.D. Ill. Mar. 26, 2013) (Pallmeyer, J.).  Here, Ruffin has stated allegations that may "plausibly" be true, but has not met her obligation to allege actual facts that support that "plausible" claim.

In conclusion, to the extent that a title holder to the property has the ability to challenge the validity of an instrument that constitutes a cloud on title, the Court finds no such "cloud" in this case.  As such, the Court grants judgement on the pleadings as to Count VII and VIII.

*Declaratory Relief (Count IX)*

Defendants contend that they are entitled to judgement on Count IX because Ruffin's claim for declaratory relief cannot be an independent cause of action, and because declaratory judgement is duplicative of Ruffin's other substantive causes of action.  The federal Declaratory Judgment Act provides that, subject to certain exceptions, "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and

8

other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). However, the Court retains discretion to dismiss a declaratory judgement action when it is duplicative of a plaintiff's other substantive claims. *See Med. Assur. Co. v. Hellman*, 610 F.3d 371, 377 (7th Cir. 2010); *Frazier v. U.S. Bank*, No. 11 C 8775, 2013 WL 1337263, at *12 (N.D. Ill. Mar. 29, 2013) (St. Eve, J.).

Count IX seeks a declaration on the same issues that Ruffin's substantive claims would resolve. For example, Ruffin raises whether Defendants can assert an adverse claim on her title to the property at issue in Count VIII and Count IX. (Dkt. 1, Count VIII ¶ 7; *Id.*, Count IX ¶ 8.) In other words, the relief Ruffin seeks in Count IX is covered by her other claims. Even if Ruffin's declaratory relief claim was proper, which it is not, Ruffin failed to respond to Defendants' argument on this count, and thus also has conceded this argument. *Alioto*, 651 F.3d at 721 (7th Cir. 2011).

**Conclusion**

Based on the foregoing, Defendants' Motion for Judgement on the Pleadings [38] is granted.

IT IS SO ORDERED.

Date: 3/26/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge